PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR AMTRUST BANK, | ) ) ) ) | CASE NO. 1:08CV2390 |
| Plaintiff, | ) ) | JUDGE BENITA Y. PEARSON |
| v. | ) ) ) | |
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, | ) ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 58] |

    This action is before the Court upon Defendant Commonwealth Land Title Insurance Company's Motion to Disqualify Thompson Hine LLP ("Thompson Hine") as Attorneys for Plaintiff The Federal Deposit Insurance Corporation ("FDIC"), as Receiver for AmTrust Bank ("AmTrust") (ECF No. 58). The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. Defendant seeks to disqualify Thompson Hine simply because non-party Chicago Title Insurance Company ("Chicago Title") became a corporate affiliate of Defendant after all the facts giving rise to Plaintiff's claims occurred and the Complaint (ECF No. 1) was filed in the case at bar. For the reasons stated herein, the motion is denied.

(1:08CV2390)

## I. OVERVIEW

**A. Factual Background**

Plaintiff represents the interests of a federally insured bank that is no longer in business.[1] AmTrust had two residential mortgages on its ledger and both mortgages later defaulted. ECF No. 1-1 at 1, 5, 8. At the residential closings, AmTrust obtained two form title insurance policies from Defendant. *Id*. at 5, 8. Due to alleged defects in the title, AmTrust was not able to collect as expected from the foreclosures. *Id*. at 5, 8 AmTrust seeks indemnification from Defendant on the title insurance policies. *Id* at 11-12.

On October 8, 2008, Thompson Hine, attorneys for AmTrust, filed a Complaint (ECF No. 1) in the case at bar. AmTrust asserts two causes of action against Defendant: (1) breach of contract and (2) bad faith claims denial.

When Defendant filed its Corporate Disclosure Statement (ECF No. 12) in the case at bar on June 12, 2009, it revealed that it is a wholly owned subsidiary of Chicago Title. At that time, Thompson Hine was representing Chicago Title as a client in the *Brown* and *Moore* matters, as discussed below. As of September 2010, Chicago Title was no longer a Thompson Hine client. ECF No. 59 at 3; *see also* ECF No. 58-3 at 1.

---

[1] The FDIC is acting as receiver for AmTrust. On December 4, 2009, the Office of Thrift Supervision closed AmTrust and the FDIC was named Receiver. All deposit accounts were transferred to the New York Community Bank, Westbury, New York. On December 5, 2009, the former AmTrust locations reopened as branches of New York Community Bank. The Federal Deposit Insurance Corporation, available at http://www.fdic.gov/bank/individual/failed/amtrust.html (last visited August 24, 2012).

(1:08CV2390)

Judge Kathleen M. O'Malley[2] held a Case Management Conference on June 12, 2009, and set forth a schedule for the parties. ECF No. 13. On January 12, 2010, the FDIC was substituted as the receiver for AmTrust. Discovery ended on July 16, 2010, and both parties filed motions for summary judgment. *See* ECF Nos. 38 and 44. The Court has not yet decided either motion.

In January 2012, Defendant's attorneys read the decision in *Little Italy Dev. LLC v. Chicago Title Ins. Co.*, No. 1:11CV112, 2011 WL 6012355 (N.D. Ohio Dec. 1, 2011) (Gaughan, J.), and became aware of the alleged conflict of interest in the instant dispute. ECF No. 58-2. Thompson Hine represented Chicago Title—the parent company of Defendant—in two matters listed below that were concurrent with the instant case.[3] Thompson Hine filed the case at bar on October 8, 2008, and Chicago Title acquired Defendant on November 26, 2008. ECF No. 58.-4. The following are the relevant excerpts from *Little Italy*:

> In August of 2007, Thompson Hine agreed to represent Chicago Title in an action against, among others, Pamela Moore ("the Moore matter") alleging that Moore improperly diverted escrow funds for her personal use. Shortly thereafter, an agreed judgment was entered in the amount of $365,837.95. From approximately January 7, 2009 through November 20, 2009, Thompson Hine foreclosed on Moore's property in order to satisfy the judgment. During the majority of this time period, Thompson Hine's client contact at Chicago Title was attorney Aaron Wegner. The foreclosure sale resulted in a deficiency of $77,000. On November 21, 2009, Chicago Title emailed Thompson Hine and indicated that "it may be

---

[2] On January 20, 2011, the above-entitled action was reassigned from Judge O'Malley to the undersigned pursuant to General Order No. 2011-3.

[3] Thompson Hine filed the *Brown* matter on December 8, 2008, after this case was filed and after Chicago Title acquired Defendant. The *Brown* matter ended on August 30, 2010. The *Moore* matter began during August of 2007, before the instant case was filed, and continued until June 8, 2010.

3

(1:08CV2390)

>that you will be able to close your active file upon completion of the payment proceeds." On May 14, 2010, Thompson Hine conducted a debtor's examination of Moore, which showed that Moore had no significant assets. On June 7, 2010, Chicago Title inquired as to whether Moore had been criminally indicted. Thompson Hine contacted the prosecutor's office the following day. The time charge for the telephone call to the prosecutor is the last time entry Thompson Hine made with respect to the Moore matter. Over a year later, on July 1, 2011, Chicago Title sent an email to Thompson Hine asking whether Thompson Hine had "heard anything from Pam Moore," and questioning whether an indictment was ever filed.

*Little Italy Development LLC,* 2011 WL 6012355, at *1.

>Thompson Hine also represented Chicago Title in a similar matter filed on December 8, 2008 (the "Brown matter"). Chicago Title moved for summary judgment on November 3, 2009. Thereafter, an agreed judgment of approximately $255,000 was entered against the defendants in the Brown matter. On May 14, 2010, Thompson Hine conducted a debtor's examination and began garnishing Brown's wages. The last time charges entered by Thompson Hine occurred on August 5 and August 30, 2010. On August 30, 2010, Thompson Hine sent a letter to Chicago Title indicating, "at this point all we are doing is forwarding the proceeds from the wage garnishment. Do you want us to close our file and direct the garnishments be sent directly to you?" Chicago Title responded, "Please close it out." Nearly a year later, on August 1, 2011, Chicago Title contacted Thompson Hine, indicating that it had "not received any funds since March," and inquired as to whether Thompson Hine could "look into" the matter. Thompson Hine responded that it could no longer represent Chicago Title as it was representing [Little Italy Development], who is adverse to Chicago Title.

*Id.* On January 17, 2012, Defendant notified Thompson Hine of the alleged conflict in the case at bar. *See* ECF No. 58-2. Thompson Hine replied arguing that it did not violate Ohio Rule of Professional Conduct 1.7 ("Prof.Cond.R. 1.7"); and if they did, said violation does not warrant disqualification. *See* ECF No. 58-3. Defendant filed the within Motion to Disqualify on February 23, 2012. ECF No. 58. Chicago Title, Defendant and their parent company (Fidelity

4

(1:08CV2390)

National Title Group)[4] have not provided Thompson Hine with an express or implied consent for the alleged conflict. ECF No. 58-2. Defendant now request the Court to disqualify Thompson Hine from representing Plaintiff in the case at bar.

**B. The Parties Arguments**

Defendant argues that Thompson Hine's attorneys violated Prof.Cond.R. 1.7, and that violation should be imputed to the entire firm resulting in Thompson Hine's disqualification from the instant case. Defendant asserts that *Cliffs Sales Co. v. American S.S. Co.*, No. 1:07CV485, 2007 WL 2907323 (N.D. Ohio Oct. 4, 2007) (Nugent, J.), dictates a conflict of interest exists between Thompson Hine and Defendant. Lastly, *Carnegie Cos., Inc. v. Summit Properties, Inc.*, 183 Ohio App.3d 770 (Ohio App. 9th Dist. 2009) requires *per se* disqualification of Thompson Hine.

Defendant asserts that it "share[s] claims centers, employees and computer billing systems[ ] (known as tymetrics)" with Chicago Title. ECF No. 58 at 7. *See also* ECF No. 60-1 at ¶¶ 4-7. Plaintiff argues that no conflict of interest exist between Thompson Hine and Defendant because there was no "unity of interest" between Chicago Title and Defendant. ECF No. 59 at 7-8. Alternatively, even if Defendant could demonstrate that a conflict of interest exists in the instant case, according to Plaintiff, Ohio law does not require disqualification, which is neither necessary nor just under the facts and circumstances of this case. ECF No. 59 at 9.

In reply, Defendant contends that it has met its burden to show a violation of Prof.Cond.R. 1.7.

---

[4] Affidavit of David Golub (ECF No. 60-1) at ¶ 8.

5

(1:08CV2390)

## II. STANDARD FOR DISQUALIFICATION

The Ohio Rules of Professional Conduct govern all attorneys practicing before the Court. LR 83.7(a); *see also* LR 83.5(b) and (f). The Court has discretion to disqualify an attorney as a remedial measure for violation of ethical standards. Disqualification of counsel is viewed with disfavor because it impinges on the party's right to employ the attorney of its choice.

Disqualification is an extreme remedial measure, and the Court should disqualify an attorney "only when there is a reasonable possibility that some specifically identifiable impropriety actually occurred and, in light of the interest underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his own choice." *Lamson & Sessions Co. v. Mundinger*, No. 4:08CV1226, 2009 WL 1183217 (N.D. Ohio May 1, 2009) (Boyko, J.) (citations and internal quotations omitted).

The party seeking disqualification "bears the burden of demonstrating the need to disqualify counsel even though the allegation involves ethical considerations. *Id*. at *4 (citing *Centimark Corp. v. Brown Sprinkler Serv., Inc*., 620 N.E.2d 134, 137 (11th Dist. Ohio App. 1993)). Disqualification must be a necessary remedy to the violation. *Id.*

## III. ANALYSIS

**A. Rule 1.7 of the Ohio Rules of Professional Conduct**

The relevant portions of the rule provide: "A lawyer shall not . . . continue the representation of a client if a conflict of interest would be created" unless "the lawyer will be able to provide competent and diligent representation to each affected client" and "each affected

6

(1:08CV2390)

client gives *informed consent, confirmed in writing*." Prof.Cond.R. 1.7(b)(1)-(2) (emphasis in original).

> A lawyer's . . . continuation of representation of a client creates a conflict of interest . . . [when] (1) the representation of that client will be directly adverse to another current client; [or] (2) there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyers responsibilities to . . . a former client. . . .

Prof.Cond.R. 1.7(a)(1)-(2) (emphasis in original).

Defendant argues that Thompson Hine must be disqualified from representing Plaintiff in the instant case because of an alleged conflict of interest. According to Defendant, Thompson Hine violated Prof.Cond.R. 1.7. Defendant argues that the violation mandates the disqualification of Thompson Hine because of Thompson Hine's representation of Chicago Title in the *Brown* and *Moore* matters is directly adverse to Defendant's present interest.

The Court has a "duty to inquire into the nature of the conflict at such time as it became aware of the potential for conflict of interest." Suttles v. Wilson, 288 F. App'x 257, 260 (6th Cir. 2008). The Court must analyze whether there is a conflict of interest, and if there is, whether disqualification is necessary. The Court must determine whether Thompson Hine's prior representation of Chicago Title, and present representation of the FDIC in this lawsuit is directly adverse to Defendant, or there is a substantial risk that Thompson Hine's ability in regard to its current representation of the FDIC is materially limited by its responsibility to Thompson Hine's prior client, Chicago Title.

7

(1:08CV2390)

**B. Whether There is a Conflict of Interest Between Thompson Hine and Defendant**

The Court finds that Thompson Hine's representation of Chicago Title and the FDIC is not directly adverse to Defendant. Thompson Hine and Defendant do not have a past attorney-client relationship, and Thompson Hine's prior representation of Chicago Title is not substantially related to the instant case.

**1. Whether Thompson Hine's Prior Representation of Chicago Title, and Current Representation of the FDIC in This Case is Directly Adverse to Defendant**

"The concurrent representation of clients whose interests are directly adverse always creates a conflict of interest." Prof.Cond.R. 1.7, cmt. 10.

**a. Thompson Hine and Defendant do not Have a Past Attorney-Client Relationship**

The first step in the inquiry under Prof.Cond.R. 1.7 is to identify the clients. *Carnegie Cos., Inc.*, 183 Ohio App.3d at 781 (citing Prof.Cond.R. 1.7, cmt. 2). Rule 1.7 "applies only to conflicts of interest involving current clients." *Id.* Determining the existence of an attorney-client relationship is a fact-based inquiry. Thompson Hine and Chicago Title have a past attorney-client relationship. The threshold issue in the instant matter, however, is whether Thompson Hine and *Defendant* had a past attorney-client relationship.

"An attorney-client relationship includes the representation of a client in court proceedings, advice to a client, and any action on a client's behalf that is connected with the law." *Hamrick v. Union Tp., Ohio*, 79 F.Supp.2d 871, 875 (S.D.Ohio 1999) (citing *Landis v. Hunt*, 80 Ohio App.3d 662, 669-70 (Ohio App. 10th Dist. 1992)). The test of whether an attorney-client relationship was created is essentially "whether the putative client reasonably

8

(1:08CV2390)

believed that the relationship existed and that the attorney would therefore advance the interests of the putative client." *Id*. (quoting *Henry Filters, Inc. v. Peabody Barnes, Inc.*, 82 Ohio App.3d 255, 261 (Ohio App. 6th Dist.1992)). "An essential element as to whether an attorney-client relationship has been formed is the 'determination that the relationship invoked such trust and confidence in the attorney that the communication became privileged and, thus, the information exchanged was so confidential as to invoke an attorney-client privilege.'" *Id.* (quoting *Landis*, 80 Ohio App.3d at 669).

Defendant is not a client of Thompson Hine just by virtue of the fact that it is wholly owned by Chicago Title. *See Cliffs Sales Co.*, 2007 WL 2907323, at *4 (stating a "corporate client's subsidiary is not a client of the firm just by virtue of the fact that it is wholly owned by the law firm's corporate client"). Upon review, the parties do not dispute that Thompson Hine had an attorney-client relationship with Chicago Title—Defendant's parent company. Chicago Title and Defendant did not become corporately related, however, until after the Complaint (ECF No. 1) in the instant case had been filed. The case at bar also involves form insurance contracts entered into with Defendant long before it had any relationship with Chicago Title and before Chicago Title's 2008 acquisition of Defendant.

Moreover, "parent and subsidiary corporations are separate and distinct legal entities, 'even if the parent owns all of the outstanding shares of the subsidiary.'" *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St. 3d 470, 477 (2006) (quoting *Mut. Holding Co. v. Limbach*, 71 Ohio St.3d 59, 60 (1994)). The attorney-client relationship is a contractual one, and a contract cannot bind parties that are not included in the contract. *See Dinkins v. Zavarello*, No.

9

(1:08CV2390)

10834, 1983 WL 3963, at *1 (Ohio App. 9th Dist. 1983) ("The attorney-client relationship is contractual in nature.").

During the *Brown* and *Moore* matters, Defendant could not have had a reasonable belief that Thompson Hine was their counsel because Defendant was represented by their own attorneys. *See Cuyahoga County Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 262 (2003) (holding that the law focuses on the "reasonable expectations of the person seeking representation"). Defendant was not a party to Chicago Title's *Brown* or *Moore* matters. Chicago Title and Defendant appear to have separate legal departments; otherwise this potential conflict would have been brought to the attention of the parties sooner. Chicago Title's indirect interest in its subsidiary (*i.e.*, Defendant) succeeding in the litigation against the FDIC is solely insufficient to create a situation of direct adversity.

Concurrent conflicts of interest can arise from the following: the lawyer's responsibilities to another client, a former client, a third person, or from the lawyer's own interests. A former attorney-client relationship is not necessary for a conflict of interest to occur, but it is sufficient. *See* Bruce A. Green, *Conflicts of Interest in Litigation: The Judicial Role*, 65 Fordham L. Rev. 71, 71-72 (1996). ("[T]he 'conflict rules' are best understood as rules of 'risk avoidance.' They address situations in which there is a risk that a lawyer will not adequately carry out obligations to a present or former client because of competing obligations to another present or former client or because of the lawyer's own competing interests."); *see also* Restatement (Third) of Law Governing Law § 135 (2000) (noting "a lawyer may not represent a client in any matter with respect to which the lawyer has a fiduciary or other legal obligation to another if there is a

10

(1:08CV2390)

substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's obligation.").

The Court finds that Thompson Hine and Defendant did not have an attorney-client relationship.  *See* Kitts v. U.S. Health Corp. of S. Ohio, 97 Ohio App.3d 271, 275-76 (Ohio App. 4th Dist. 1994) (holding disqualification was improper because none of the parties seeking disqualification had been represented by the attorney's former law firm, thus without an attorney-client relationship).  Because the record does not illustrate any of the other bases for Thompson Hine to have a conflict of interest with Defendant, it is reasonable to conclude that a conflict of interest does not exist; thus, Thompson Hine's representation of the FDIC is not adverse to Defendant.

### b. Thompson Hine's Prior Representation of Chicago Title is Not Substantially Related to the Instant Case

A "'[s]ubstantially related matter' denotes one that involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter."  Prof.Cond.R. 1.0(n).  The Court must gauge the degree, if any, to which Thompson Hine's representation of Chicago Title in the *Brown* or *Moore* matter may influence their representation of the FDIC or regard for Defendant's welfare.

The relevant time period for purposes of this analysis is from August 1, 2007 through August 30, 2010.  During that three-year period, Thompson Hine represented Chicago Title in two matters (the *Brown* and *Moore* matters) that Defendant has now brought to the attention of the Court.  The *Brown* and *Moore* matters were both debt collection actions.

11

(1:08CV2390)

The dispute in the case at bar involves two form title insurance policies on two separate residential parcels of real estate in New York City.  The FDIC alleges that Defendant has unreasonably refused to honor its contractual obligations.  It asserts claims for breach of the insurance contracts and bad faith failures to satisfy insurance claims.  Defendant asserts that it "share[s] claims centers, employees and computer billing systems[ ] (known as tymetrics)" with Chicago Title.  ECF No. 58 at 7.  *See also* ECF No. 60-1 at ¶¶ 4-7.  Defendant argues some of those decisions were made by shared employees of both companies.  ECF No. 58 at 7.  The Court finds this argument unpersuasive.  Shared workspace and employees may demonstrate there is a superficial relationship, but the cases are not substantially related.

Chicago Title was the plaintiff in both the *Brown* and *Moore* matters.  Thompson Hine was its attorney; however, neither matter involved breach of a title insurance policy, nor bad faith denial of claims.  These matters apparently did not require Chicago Title to disclose any title insurance processing procedures.  Nevertheless, Defendant is the company accused of breach of contract and bad faith denial of claims.  Chicago Title could not have had any control or knowledge of the specific denials on which the instant case is based because the form insurance contracts were entered into with Defendant long before it had any relationship with Chicago Title and before Chicago Title's 2008 acquisition of Defendant.

If the work were substantially related, there would be a greater risk that Thompson Hine acquired confidential information from its representation of Chicago Title that would be adverse and harmful to Defendant.  *Campbell v. Indep. Outlook, Inc.*, No. 04AP-310, 2004 WL 2892884, at *2, ¶ 7 (Ohio App. 10th Dist. Dec. 14, 2004).  "[T]o have a substantial relationship, there must

12

(1:08CV2390)

be a commonality of issues between the prior and present representation." *Id.* at *3, ¶ 11.

Defendant has not shown that there is a commonality of issues between the instant case and the *Brown* and *Moore* matters. Some evidence to suggest that the former representation is substantially related to the case at bar is required. An unsupported allegation is insufficient. *Centimark Corp.*, 85 Ohio App. 3d at 489. The Court finds that the subject matter of Thompson Hine and Chicago Title's relationship in the *Brown* and *Moore* matters is not substantially related to the instant case. *See Mansfield Plumbing Products, LLC v. Franze*, No. 04COA012, 2004 WL 2002926, at *2 (Ohio App. 5th Dist. Aug. 30, 2004) (finding that employment matters, immigration issues, and environmental issues are not substantially related to a violation of a fiduciary duty to a corporation and its main shareholders). The type of legal work done for Chicago Title does not place Thompson Hine in a position that is adversarial to Defendant.

**2. Whether There is a Substantial Risk that Thompson Hine's Ability to Consider, Recommend, or Carry Out an Appropriate Course of Action for the FDIC Will be Materially Limited by Thompson Hine's Responsibilities to Chicago Title**

According to Prof.Cond.R. 1.7, cmt. 14,

> [t]he mere possibility of subsequent harm does not, itself, require disclosure and consent. The critical questions are: (1) whether a difference in interests between the client and lawyer or between two clients exists or is likely to arise; and (2) if it does, whether this difference in interests will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of any affected client.

### a. Whether a Difference in Interests Between the FDIC and Thompson Hine Exists or is Likely to Arise

There is a material limitation conflict of interest if a decision that the lawyer must advocate on behalf of one client in one case will create a precedent likely to seriously weaken the

13

(1:08CV2390)

position taken on behalf of another client in another case.  Prof.Cond.R. 1.7, cmt. 17.  A material limitation conflict is not present because of the following:  (1) the *Brown* and *Moore* matters are no longer pending; (2) the instant case is of a substantive nature, whereas the *Brown* and *Moore* matters were more procedural; (3) the temporal relationship between the matters do not indicate a material limitation; (4) the significance of the issue to the immediate and long-term interests of the clients involved do not indicate a material limitation; and (5) Defendant could not have had a reasonable expectations that it retained Thompson Hine because Thompson Hine communicated to Chicago Title that Thompson Hine no longer represented it.  *Id.*

### b. Whether This Difference in Interests Will Materially Interfere With Thompson Hine's Independent Professional Judgment in Considering Alternatives or Foreclose Courses of Action That Reasonably Should be Pursued on Behalf of Any Affected Client

Because a difference in interests does not exist, the Court finds that Thompson Hine's prior representation of Chicago Title would not pose a substantial risk that Thompson Hine's ability has been or would be materially altered to consider, recommend, or carry out an appropriate course of action for the FDIC.  For the reasons set forth previously, the *Brown* and *Moore* matters are not substantially related to the instant matter and there is a lack of an attorney-client relationship between Thompson Hine and Defendant.

Defendant argues "there is no way to determine whether attorney-client information relating to methods in which claims are handled was obtained by Thompson Hine in one representation and used against the subsidiary client Commonwealth in this litigation."  ECF No. 58 at 7.  The claims for bad faith refusal to satisfy an insurance claim—the only claims that could be related to Defendant's speculative claims-handling assertion regarding privileged

14

(1:08CV2390)

information—are based solely upon the facts and circumstances underlying Defendant's handling of Plaintiff's claims before the 2008 filing of the Complaint (ECF No. 1) in the instant matter and long before Chicago Title's acquisition of Defendant.  Defendant does not explain how Thompson Hine could have discovered Defendant's corporate policies, procedures, and other confidential information, nor does it discuss the temporal disconnect and the lack of a relationship between the instant case and the *Brown* and *Moore* matters.  Moreover, Chicago Title and Defendant did not have a corporate affiliation at the time of the facts giving rise to the instant case.

The lack of attorney-client relationship between Defendant and Thompson Hine also illustrates that Thompson Hine would not be materially limited in its responsibilities to the FDIC.  It is unlikely that Thompson Hine would have acquired confidential information that could be useful in the representation of the FDIC against Defendant in the current litigation.  The time line of events for the matters also illustrates there is not a substantial risk that Thompson Hine will be materially limited in its current representation of the FDIC.

**C.  Whether Disqualification is Required**

The Court finds that disqualification is not required for the reasons stated above. "[N]othing on the face of Rule 1.7 requires that a court *disqualify* an attorney for a violation of that rule;" therefore, "disqualification is not *per se* required."  Little Italy Development LLC, 2011 WL 6012355, at *10 (emphasis in original); *see also* Cliffs Sales Co., 2007 WL 2907323, at *2 (denying motion to disqualify despite violation of rule against current-client conflicts and stating that "a violation of the rules of professional responsibility does not automatically

15

(1:08CV2390)

necessitate disqualification of an attorney"). Furthermore, Prof.Cond.R. Preamble at (20) provides that "violation of a rule [of professional conduct] does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation." "Although a former client conflict may exist when there is merely a 'substantial risk' that confidential information has been gained, disqualification requires that confidential information has actually been acquired." Lamson & Sessions Co., 2009 WL 1183217, at *4 (footnote omitted). The primary purpose of disqualification is the protection of confidentiality of information, "even if the information is only potentially involved in the current action." Morford v. Morford, 85 Ohio App.3d 50, 57 (Ohio App. 4th Dist. 1993) (citing In re Mount Vernon Plaza Community Urban Redevelopment Corp. I, 85 B.R. 762, 764 (Bkrtcy. S.D. Ohio 1988) (holding that disqualification is proper when attorney had access to relevant privileged information). Disqualification of Thompson Hine is not necessary or appropriate.

### IV. CONCLUSION

Defendant Commonwealth Land Title Insurance Company's Motion to Disqualify Thompson Hine as Attorneys for Plaintiff (ECF No. 58) is denied.

The telephone conference set for September 17, 2012 is canceled.

IT IS SO ORDERED.

 September 7, 2012                         /s/ Benita Y. Pearson
Date                                     Benita Y. Pearson
                                           United States District Judge